# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-24221-CIV-LENARD/LOUIS

**PABLO DARIO CASTILLO,**

     Plaintiff,

**v.**

**FERNANDO COLMENARES,**

     Defendant,

_____/

**FERNANDO COLMENARES,**

     Counter-Plaintiff,

**v.**

**PABLO DARIO CASTILLO,**

     Counter-Defendant,

_____/

## <u>ORDER</u>

**THIS CAUSE** is before the Court on the Plaintiff Pablo Castillo's ("Plaintiff") *ore tenus* Motion for Default Judgment ("Motion"), the findings of which are adopted and supplemented in this Order, and the Notice of Apology and Explanation for Missed Pretrial Conference ("Apology") (D.E. 309) filed by the Defendant Fernando Colmenares

("Defendant").[1]  On December 10, 2024, the Court entered an Order setting the pretrial conference for June 16, 2025, in anticipation of the trial in this case on June 30, 2025. This case has been previously set for trial three times and has been continued each time. As more than three and a half years have elapsed since the filing of this case, the resolution of this matter is long overdue.

On June 16, 2025, at the final scheduled pretrial conference, the Defendant, representing himself *pro se*, failed to appear. Plaintiff's counsel was present, and the Court waited 30 minutes for the Defendant to arrive. At no time did the Defendant contact by any means the Plaintiff's counsel, the Court's chambers, or the Clerk's office by phone, email, or in person to report any delay or inability to timely attend the pretrial conference. After waiting 30 minutes, the Plaintiff moved for default judgment, which the Court granted. As an additional sanction, the Court entered a *sua sponte* dismissal of the counterclaim. Two hours after the conclusion of the pretrial conference, the Defendant filed his Apology, claiming to have missed the pretrial conference due to car troubles. D.E. 309. Having considered the pleadings, the Motion, the docket, and otherwise being fully informed, the Court orders as follows.

## I.    Background

The Plaintiff filed the Complaint ("Complaint") (D.E. 1) on December 1, 2021, alleging the following Counts against the Defendant: (I) breach of fiduciary duty; (II)

---

[1] The Court construes the Apology as a Motion to Set Aside Default. Plaintiff did not file a response to the Apology. As the Apology was filed on June 16, time has now expired for the Plaintiff to respond to the Apology.

fraudulent misappropriation;[2] (III) conversion; and (IV) constructive trust. D.E. 1 at 4-10. The Complaint alleges that the Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332. The Plaintiff is an Argentine citizen who resides in Argentina. D.E. 1 at 1. The Defendant is a citizen of Florida. *Id.* The Plaintiff alleges an amount in controversy greater than $75,000. *Id.* The Defendant filed his Answer, Affirmative Defenses, and Counterclaim ("Counterclaim") (D.E. 34) on April 21, 2022.

On December 10, 2024, the Court entered an Order (D.E. 294) setting the trial in this case to begin on June 30, 2025, and set the pretrial conference for June 16, 2025, at 9:00 a.m. On March 7, 2025, the Court entered another Order ("Scheduling Order") (D.E. 301) which again set the start date of the trial to June 30 and the date of the pretrial conference to June 16. D.E. 301. However, the starting time of the pretrial conference was set to 9:30 a.m. *Id*.

At the pretrial conference, the Plaintiff's counsel timely appeared before the Court. The Defendant failed to appear at 9:30 a.m. The Court then waited until 10:00 a.m. for the Defendant to make an appearance. The Defendant did not appear by that time or at any time afterward, nor did he contact the Court or the Plaintiff's counsel. At 10:00 a.m. the Plaintiff's counsel moved for default against the Defendant. The court granted the Motion and dismissed the Counterclaim as a further. The Court notes that the Defendant did not attempt to explain his absence until several hours later.

---

[2] The Complaint has since been amended to voluntarily dismiss Count II. D.E. 263.

## II.     Applicable Law

Federal Rule of Civil Procedure 16 covers pretrial conferences and gives district judges the authority to impose sanctions on a party that fails to appear at a scheduling or other pretrial conference or fails to obey a scheduling or other pretrial order. Fed. R. Civ. P. 16(f)(1)(A), (C). FRCP 16(f)(1) provides that these sanctions may include those authorized by FRCP 37(b)(2)(A)(ii)-(vii). Fed. R. Civ. P. 16(f)(1). Among the sanctions which a court may impose under FRCP 37, a court is empowered to dismiss a case or enter default judgment. Fed. R. Civ. P. 37(b)(2)(A)(v)-(vi).

Under Rule 55, a Court may enter default judgment "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend[.]" Fed. R. Civ. P. 55(a). Default judgment "is a sanction of last resort, reserved for cases in which the party's misconduct is willful or in bad faith — mere negligence is not enough." *Suarez v. Marbridge Restoration, LLC*, No. 24-22780-CIV, 2025 WL 1433626, at *2 (S.D. Fla. Mar. 6, 2025) (citing *Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1542 (11th Cir. 1993)). Nevertheless, default judgment is an appropriate sanction against a party that has engaged in a pattern of bad faith which culminates in that party's failure to appear at a scheduled conference. *See Marbridge*, No. 24-22780-CIV, 2025 WL 1433626, at *2 ("Courts routinely enter default judgment where a party repeatedly flouts court orders, skips hearings, or obstructs discovery.). However, "[b]ecause a defaulting defendant is not held to admit facts that are not well pleaded or to admit conclusions of law, the court must first determine whether the pleadings provide a sufficient basis for judgment." *Id.* Accordingly, while a court may enter default against a defendant for failure to comply with court orders

or failure to appear at scheduled hearings, a plaintiff must nevertheless demonstrate that their case merits default judgment.

Per Rule 41(b), a Court may order the dismissal of a case if the plaintiff or counter-plaintiff fails to comply with the Federal Rules of Civil Procedure. Fed. R. Civ. P. 41(b)-(c). Dismissal of an action, like default, is a sanction that is not lightly entered. Dismissal of a case is warranted where a party engages in a pattern of willful delay and deliberate refusal to comply with the directions of the court. *Goforth v. Owens*, 766 F.2d 1533, 1535 (11th Cir. 1985). The standard for dismissal under Rule 41(b) is whether there is a "clear record of delay or willful contempt and a finding that lesser sanctions would not suffice." *Id*. This record of delay can include failing to appear at scheduled hearings which results in a delay that is prejudicial to the opposing party. *Id*.

A "district court possesses the inherent power to police its docket." *Royal Palace Hotel Assocs., Inc. v. Int'l Resort Classics, Inc.*, 178 F.R.D. 588, 591 (M.D. Fla. 1997). "Incident to this power, the judge may impose formal sanctions upon dilatory litigants." *Id*. at 592. These sanctions may range from warnings to dismissal of an action without prejudice. *Id*.

## III.   Discussion

This case was filed on December 1, 2021. Despite the length of time that has passed since the filing of this case, and despite the controversies cataloged in over 300 docket entries, relatively little has actually occurred in this case. After three and a half years, this matter has yet to go to trial.

The original trial date for this case was May 22, 2023. D.E. 38. This date, however, was continued in part due to the Defendant delaying his cooperation with discovery requests. See D.E. 135; D.E. 163; D.E. 173; D.E. 180. The trial was then scheduled to begin on October 23, 2023, but was canceled due to illness. D.E. 173; D.E. 208. The trial was then set for October 7, 2024, which was later pushed to October 8, 2024. D.E. 239; D.E. 256. On October 7, the day before the trial was set to begin, the Defendant requested a continuance of the trial on dubious grounds which will be discussed in greater length below. D.E. 268.

The trial date was continued once again, not on the Defendant's request, but instead, due to the closure of the Courthouse owing to Hurricane Milton. D.E. 276. On December 10, 2024, after taking into consideration the availability of both parties, the Court set this case for June 30, 2025, with a pretrial conference set for June 16. D.E. 294. The Court, seeking a timely resolution of this case, later advanced the trial date to March 10, 2025. D.E. 298. However, at the request of the Plaintiff, and with the Defendant's consent, the Court returned the trial date to June 30, 2025. D.E. 299; D.E. 300; D.E. 301.

The lengths of time between the trial dates are owed, in large part, to the unavailability of the Plaintiff and Defendant. As the Plaintiff is a resident of Argentina, procuring travel to and lodging in Florida in anticipation of a trial can be costly and may require several months of advance notice. The Court, in setting the trial dates, also made significant accommodations to the Defendant, who has filed numerous notices of unavailability for lengthy periods of time since the outset of this trial. D.E. 82; D.E. 137; D.E. 145; D.E. 152; D.E. 161; D.E. 187; D.E. 210; D.E. 211; D.E. 213; D.E. 222; D.E.

231; D.E. 243; D.E. 249; D.E. 279. That the Defendant would seek further delay is not a matter the Court finds should be taken lightly.

Since the outset of this case, the Defendant has turned the case into a multi-year saga by delaying and multiplying the proceedings, by filing frivolous and repetitious motions and appeals, and by showing a flagrant disregard for the Court's orders and prejudicing the opposing litigants.

This behavior has been met by the Court with both warnings and sanctions. Despite these deterrents, the Defendant has persisted in his conduct. With the most recent conduct by the Defendant, the Court now reviews the drawn-out and tortured history of this case that spans five calendar years.

For the reasons stated below, the Court finds that an entry of default against the Defendant on Counts I, III, and IV and dismissal of the Counterclaim are appropriate sanctions for the Defendant's failure to appear at the final scheduled pretrial conference and for the Defendant's clear pattern of willful, bad faith, and dilatory behavior throughout this case.

### a. 2022

Since the commencement of this action, the Defendant has caused delays of this case and harassed opposing parties. By way of a responsive pleading to the Complaint, the Defendant filed on February 28, 2022, a Motion (D.E. 15) to Dismiss for Failure to Join a Necessary and Indispensable Party, specifically Cash Investments, LLC, a Florida entity. D.E. 15. The Court denied the motion on the basis that the Cash Investments was not a necessary or indispensable party. D.E. 24 at 7-9. The Court moreover found that joining

Cash Investments would destroy diversity jurisdiction. *Id.* at 7-8. The Court admonished the Defendant for his lack of citation to authority and legal analysis. *Id*. at 8. This was the first, though not the last, baseless attempt by the Defendant to destroy diversity jurisdiction in an attempt to derail this action.

On April 21, 2022, the Defendant filed his Counterclaim, alleging claims against several Florida entities including New Miami Habitat, LLC, Warranty Investments, LLC, and First Option, LLC. D.E. 34 at 10-16. This was yet another transparent attempt to destroy diversity jurisdiction. In dismissing the counts against the Florida entities, the Court noted that these were not compulsory counterclaims and were instead "wholly unrelated" to the Plaintiff's claims. D.E. 88 at 18. The Defendant's repeated and baseless attempts to destroy diversity jurisdiction have had the effect of unnecessarily protracting the early stages of this action.

The Defendant further unnecessarily multiplied the proceedings by filing repetitive and baseless motions, apparently with the intent of harassing and wearing down his opponent. For instance, between May 16, 2022, and May 25, 2022, the Defendant filed a Motion for Default Judgment (D.E. 50) and a Motion for Default (D.E. 64) against the Plaintiff, both alleging that the Plaintiff had not filed a responsive pleading to his Counterclaim. *See* D.E. 50; D.E. 64. Both motions were unsuccessful as the Plaintiff had already timely filed an Answer and Motion to Dismiss (D.E. 43) prior to the Defendant's motions for default. *See* D.E. 43. Because the Defendant advanced an argument that could be disproven by a cursory review of the docket and was made with the apparent intention of harassing the Plaintiff, these filings were made in bad faith. *See In re Evergreen Sec.,*

8

*Ltd.*, 570 F.3d 1257, 1273 (11th Cir. 2009) ("A finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument[.]")

The filings of *pro se* litigants are to be liberally construed and held to less stringent standards. *Erickson v. Pardus*, 551 U.S. 89, 95 (2007). Nevertheless, this lowered standard does not permit *pro se* litigants such as the Defendant to abuse the pretrial process to delay the proceedings. Had these motions been isolated incidents, the Court would not afford particular weight to these motions in its finding of bad faith. However, these frivolous filings were but the first in many through which the Defendant would harass and beleaguer his opponent, delay the proceedings, and waste the Court's time and resources.

The Defendant also failed to adhere to Court orders and his obligations. On August 15, 2022, the Defendant filed a summary of the mediation (D.E. 89), claiming that the Plaintiff had received satisfaction for his claims and thus was not owed any money by the Defendant. D.E. 89 at 2. The next day, the Mediator Anne Bloom, Esq. ("Mediator") filed her Mediator's Report ("Mediator's Report") (D.E. 90), stating that the parties were at an impasse. D.E. 90. On September 9, 2022, the Defendant filed an Expedited Motion ("Motion to Set Aside Mediation") (D.E. 102) requesting that the Court set aside the mediation and relieve the Defendant of his obligation to pay the Mediator. In the Motion to Set Aside Mediation, the Defendant claims that while he "enjoyed the conversation with the mediator Anne Bloom," the Plaintiff was not present, and the mediation occurred solely between the Defendant and the Mediator. D.E. 102 at 4-5.

In response to the Motion to Set Aside Mediation, the Mediator filed a response ("Mediator's Response") (D.E. 106), in which she described the Defendant's account of

the mediation as "patronizing, incorrect, and disingenuous." D.E. 106 at 1. The Mediator's Response requested that the Defendant be ordered to pay the Mediator her fee, plus $800 for the time spent responding to the Motion to Set Aside Mediation. *Id*. at 2. The Plaintiff filed his own response (D.E. 113), in which he concurred with the Mediator's allegations. D.E. 113 at 2-4. The Court denied the Motion to Set Aside Mediation and ordered the Defendant to pay the Mediator's fee, but declined to fine the Defendant $800, provided the Defendant made payment within seven days. D.E. 115. The Defendant failed to pay the Mediator's fee and was again ordered to pay the fee, plus $800. D.E. 132. Throughout this incident, the Defendant showed a lack of respect towards the Mediator, willfully misrepresented facts to the Court, and failed to comply with the Court's orders, even when faced with the threat of monetary penalty. Willful failure to comply with court orders may result in severe sanctions, including dismissal or default. *See Shortz v. City of Tuskegee, Ala.*, 352 F. App'x 355 (11th Cir. 2009); *Malautea*, 987 F.2d 1536.

Concurrent with his refusal to comply with his mediation obligations, the Defendant also pursued two frivolous appeals.[3] On August 24, 2022, the Defendant filed a Notice of Appeal ("First Appeal") (D.E. 94) seeking the appeal of: (1) the Order denying Defendant's Motion to Dismiss for Failure to Join an Indispensable Party, (D.E. 24); (2) the Paperless Order Denying Defendant's Motion for Default Judgment on his Counterclaims, (D.E. 54);

---

[3] As stated above, the Court recognizes that, as a pro se litigant, the Defendant is afforded greater leeway in his pleadings and that this latitude is extended to his appeals. The Court thus does not place as much weight on the significance of the Defendant's appeals in its determination of bad faith. Nevertheless, the Court considers the Defendant's frivolous appeals to be a minor episode in his persistent bad faith, and dilatory conduct throughout this case.

(3) the Paperless Order denying Defendant's Motion to Strike Plaintiff's Motion to Dismiss the Counterclaims, (D.E. 78); (4) the Paperless Order denying Defendant's Motion to Strike Warranty Investment's Motion to Dismiss the Counterclaims, (D.E. 79); (5) the Order granting the third-party Counter-Defendants' Motions to Dismiss the Counterclaims, and granting in part and denying in part Plaintiff's Motion to Dismiss the Counterclaims, (D.E. 88 at 18-19); and (6) the Order striking the Clerk's entry of default as to First Option and denying Defendant's Motion for Default Judgment against First Option (*Id.* at 19).

On September 23, 2022, the Defendant filed another Notice of Appeal ("Second Appeal") (D.E. 120) seeking the appeal of: (1) the Order Denying the Motion to Stay Pending Appeal (D.E. 109); and (2) the Order Denying the Motion to Set Aside the Mediation Conference (D.E. 115). D.E. 120.

The Defendant did not provide any legal or factual basis for either the First Appeal or the Second Appeal, nor did he allege the Court made any error in any Order. See D.E. 94; D.E. 120. All but one of the Orders the Defendant sought appeal of in the First Appeal had been entered more than 30 days prior to the First Appeal. *See* D.E. 24; D.E. 54; D.E. 78; D.E. 79; D.E. 88. The earliest had been entered more than four months prior. *See* D.E. 24. Rule 4(a)(1)(A) required the Defendant to file his notices of appeal within 30 days of the entry of the Order from which he appealed. Fed. R. Civ. P. 4(a)(1)(A).  The Defendant was informed by the Court that the Orders he sought to appeal were non-appealable, nevertheless, he persisted in his filings in pursuit of the appeals. D.E. 126 at 9; D.E. 127; D.E. 128.

As none of the above orders are final judgments subject to immediate appeal under 28 U.S.C. § 1291, the Eleventh Circuit denied (D.E. 140) the First Appeal for lack of jurisdiction, as later with its denial (D.E. 147) of the Second Appeal. *See* D.E. 140 at 2-4; D.E. 147 at 2-3. As the Defendant sought to appeal non-appealable orders, the Appeal was frivolous. *See Oliver v. M/V Barbary Coast,* CA No. 11–223–KD–C, 2012 WL 4210627, at *2 (S.D. Ala. Aug. 31, 2012). The Defendant's frivolous appeal, made with the apparent intent to delay and multiply the proceedings, is yet another instance in his pattern of bad faith and dilatory acts.

In 2022, the Defendant also failed to comply with his discovery obligations. The Defendant's non-cooperation resulted in the Magistrate Judge entering the Order on Plaintiff's Motion to Compel ("Discovery Order") (D.E. 93), requiring production of documents responsive to the Plaintiff's discovery request. D.E. 93. In response to the Discovery Order, the Defendant further delayed and obstructed discovery. To that end, he filed multiple repetitious and frivolous motions. On September 9, 2022, the Defendant filed an Expedited Motion (D.E. 101) to set aside the Discovery Order.[4] D.E. 101. That same day, the Defendant filed an Expedited Motion (D.E. 104) to stay the case, and in particular discovery proceedings, pending the resolution of his Appeal. D.E. 104 at 1. Both motions were unsuccessful.

---

[4] The Court notes that as with other instances where the Defendant misused the "expedited" or "emergency" designation for his motions, he failed to set forth in detail the date by which an expedited or emergency ruling would be needed and the reason why the ruling would be needed by the stated date. The Defendant was repeatedly admonished for this practice. D.E. 108; D.E. 109. Nevertheless, he continued to misuse expedited and emergency designations in future motions. *See* D.E. 268.

In sum, throughout 2022, the Defendant repeatedly and willfully attempted to delay or derail this case by filing baseless motions and appeals, showed flagrant disregard for the Court's authority by refusing to follow its orders, and showed a complete lack of respect for the Court, the Plaintiff, and the Mediator. Despite the Court offering numerous opportunities for the Defendant to reform this behavior, the Defendant's chicanery continued into 2023.

### b.  2023

In 2023, the Defendant faced sanctions for his noncooperation during discovery. D.E. 180. The Magistrate Judge noted that while the Defendant attempted to excuse his noncompliance with the Discovery Order by stating that he had been out of state, the Defendant had failed to take steps to comply with the Discovery Order until after the opposing parties had filed a Motion for Sanctions ("Motion for Sanctions") (D.E. 135). D.E. 149 at 2; D.E. 180 at 3. The Court now additionally notes that none of the numerous notices of unavailability filed by the Defendant state that the Defendant was unavailable for the two months that followed the Discovery Order. See D.E. 82; D.E. 137. The Defendant thus for two months delayed his cooperation with the Discovery Order, which itself was issued to direct the Defendant to comply with his existing discovery obligations to opposing parties. That the Defendant spent this period pursuing a frivolous appeal does not excuse or redeem his noncompliance.

While this case had been scheduled to begin trial on May 22, 2023, it was delayed at the Plaintiff's request. D.E. 163; D.E. 173. As a result of the Defendant's noncompliance with discovery leading to the Discovery Order, and as result of the Defendant's

noncompliance with the Discovery Order, and as a result of the Defendant's unavailability, the Plaintiff was unable to timely complete discovery, and in particular was unable to complete the depositions for corporate representatives of the Defendant's companies. D.E. 163 at 2. The Plaintiff thus sought to continue the trial. *Id*. The Defendant opposed the continuation of trial but disingenuously attributed blame to the Plaintiff for the incompleteness of discovery. D.E. 166 at 3. Instead, his own noncooperation and unavailability had resulted in a several months-long delay to the discovery process. *Id*.

That year, the Defendant further sought baseless sanctions against the Plaintiff for a harmless procedural error. After the Plaintiff's Notice to Take Deposition ("Notice to Take Deposition") (D.E. 183) was struck by the Magistrate Judge pursuant to Local Rule 26.1(b), the Defendant sought an award of sanctions against the Plaintiff. D.E. 183; D.E. 184; D.E. 185. The Defendant argued that since the filing of the Notice to Take Deposition was filed in contravention to Local Rule 26.1(b), he was entitled to sanctions. D.E. 185 at 3. The Defendant did not state that he had been damaged by the filing of the Notice to Take Deposition. *See Id*. In her *sua sponte* denial of the Defendant's motion for sanctions, the Magistrate Judge stated that the Defendant failed to explain what conduct violated what Court order, or how any violation merited sanctions. D.E. 188. The Court can draw from this episode no other conclusion but that the Defendant merely intended to harass or wear down the Plaintiff.

On October 13, 2023, ten days before this case was to begin trial, the Defendant filed a Motion for Judgment as a Matter of Law ("Motion for Judgment as a Matter of Law") (D.E. 206). While the Motion for Judgment as a Matter of Law cited Rule 50(a)(1),

the Defendant apparently failed to review that Rule, which states in pertinent part that after "a party has been fully heard on an issue *during a jury trial* and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may" resolve the issue against the party and grant a motion for judgment as a matter of law. Fed. R. Civ. P. 50(a)(1) (emphasis added). As the trial had not yet begun, the Court denied the Motion for Judgment as a Matter of Law. D.E. 207. Yet again, the Defendant had advanced a frivolous motion, in that instance because the Defendant had failed to read the Rule on which his motion relied.

Finally, several days after the trial had been continued due to illness, the Defendant filed a motion ("Motion for Interpreter") (D.E. 215) requesting the Court provide him with an interpreter for all future court proceedings, claiming that his grasp of the English language was insufficient to properly represent himself. D.E. 215 at 1-2. In denying the Motion for Interpreter, the Court noted that for over two years, the Defendant had, in his capacity as a *pro se* litigant, filed numerous motions, notices, and an appeal. D.E. 217. This matter, while trivial, was yet another tile in the Defendant's mosaic of frivolous filings. The Court was forced to spend time denying this pointless request.

The above examples compile a number of the Defendant's bad faith and frivolous actions taken in 2023. The individual effect of his actions ranged from wasting a small amount of the Court's time to delaying the trial for several months. The cumulative effect of his actions shows his ongoing disregard for the time and resources of both the Court and the Plaintiff.

### c. *2024*

In 2024, the Defendant continued for a third year his pattern of bad faith and dilatory conduct. On March 11, 2024, the Defendant filed an untimely Motion for Judgment on the Pleadings ("Motion for Judgment on the Pleadings") (D.E. 221), which drew a Response (D.E. 224) from the Plaintiff. D.E. 221; D.E. 224. On April 22, 2024, the Defendant filed a Motion to Dismiss (D.E. 226) for lack of subject matter jurisdiction, after he had concluded that despite the well-pleaded allegations in the Complaint, the amount in controversy in this case is less than $75,000. D.E. 226 at 9-10. The Plaintiff again responded. D.E. 228. On May 15, 2024, the Court denied both motions. D.E. 230.

On May 30, 2024, the Defendant filed a Motion for Reconsideration ("Motion for Reconsideration") (D.E. 236) of the Motion for Judgment on the Pleadings. D.E. 235. The Court, in its denial (D.E. 238) found that the Motion for Reconsideration included little more than a lengthy recitation of the procedural history of this case and was merely the attempt of an unhappy litigant to relitigate matters already decided. D.E. 238. *See Sherrod v. Sch. Bd. of Palm Beach Cnty.*, No. 12-CV-80263, 2012 WL 12895258, at *2 (S.D. Fla. Oct. 29, 2012) ("That [a party] is unhappy or disagrees with the Court's decision is not grounds for reconsideration."). Through his frivolous and redundant filings in the first half of 2024, the Defendant displayed his ongoing contempt for the Court and the Plaintiff.

On September 23, 2024, the Court held a pretrial conference in anticipation of the trial set to begin on October 7, 2024. At the pretrial conference, the Plaintiff moved to dismiss Count II of the Complaint. D.E. 259 at 3-4. Since amendment of the pleadings is among the matters that may be considered at a pretrial conference, the Court heard the

matter. Fed. R. Civ. P. 16(c)(2)(B). As Rule 15(a)(2) requires the consent of opposing parties for a party to amend its pleading, the Court asked the Defendant if he objected to the dismissal of Count II. D.E. 259 at 3-4. Twice, the Defendant replied: "No objection, Your Honor." *Id.* at 4. With the consent of the Defendant, the Court dismissed Count II of the Complaint.

Nevertheless, on October 3, 2024, the Defendant filed a Notice of Stipulation of Dismissal and Entry into Settlement Agreement ("Dismissal Stipulation") (D.E. 260), falsely stating that the Defendant and the Plaintiff had agreed to dismiss the entire action. D.E. 260.

The same day, the Defendant also filed an Objection to the Pretrial Conference and Motion for Mistrial ("Motion for Mistrial") (D.E. 262), even though the trial had not yet started. D.E. 262.  In it, the Defendant falsely claimed that at the pretrial, the Court had ordered the Defendant to "adapt to the plaintiff's jury instructions" but that the "defendant was unable to comply with the court's order on short notice." *Id.* at 2. The Defendant claims that because of this, the Defendant would not have a fair trial. *Id*. While the Court asked the parties to go over their proposed jury instructions together, at no point did it direct the Defendant to alter his proposed jury instructions in any way or to adapt to the Plaintiff's proposed jury instructions. D.E. 259 at 13.

On October 4, 2024, the Defendant filed a Motion to Set Aside ("Motion to Set Aside Amendment") (D.E. 266) the dismissal of Count II of the Complaint. D.E. 266. The Defendant claimed, falsely, that he had not consented to the dismissal of Count II and that the Court had made its decision to dismiss Count II in advance of the pretrial conference.

*Id.* at 1-2. A plain reading of the transcript of the September 23 pretrial conference refutes these flagrant fabrications. Twice, the Court asked the Defendant if he objected to the dismissal of Count II, and twice, the Defendant replied, "No objection, Your Honor." D.E. 259 at 4.

In addition to his misrepresentations concerning the mediation and mediator Anne Bloom (see pages 9-10), the false statements contained within the Dismissal Stipulation, Motion for Mistrial, and the Motion to Set Aside Amendment represent some of the most egregious actions of the Defendant's bad faith behavior taken in an evident attempt to derail this case less than a week before it was set for trial.[5]

Shortly thereafter, the Defendant again attempted to delay the Plaintiff's prosecution of his claims. On October 7, 2024, the day before this case was scheduled to begin trial, the Defendant filed an Emergency Motion ("Motion to Continue") (D.E. 268) to continue the trial. D.E. 268. The Motion to Continue requested the Court reschedule the trial and warned that the Defendant would not be able to attend the trial if it were not continued. *Id.* at 1. The basis for the Motion to Continue was that the Defendant had been summoned for jury duty in a state criminal trial. *Id.* at 2. As a preliminary matter, jury duty in another case

---

[5] The Court notes that both the Defendant's misrepresentations concerning the mediation, and his misrepresentations advanced through the Dismissal Stipulation, Motion for Mistrial, and Motion to Set Aside Amendment were all made with the intent to effectively end the case. In the summary of the mediation he filed, he claimed that the Plaintiff had received satisfaction for his claims and was thus not owed any money by the Defendant. D.E. 89 at 2. In the Dismissal Stipulation, the Defendant falsely and in bad faith represented to the Court that the Plaintiff had agreed to dismiss the entire action. D.E. 260. Both of these filings misrepresented that this action was either moot or resolved, and both were made with the obvious intention of ending the case before it went to trial.

does not excuse a party's participation in their own case.[6] The Defendant did not explain when he received the summons or the dates on which he was to appear in state court. *See Id*. Moreover, the partial scan of the jury summons attached to the Motion to Continue did not show when the Defendant was to appear in state court. *Id.* at 5. For these reasons, the Court is unconvinced that the Defendant was suddenly summoned in state court on the eve of his own trial.

Ultimately, the trial was continued pursuant to the closure of the Courthouse due to Hurricane Milton and the Motion to Continue was denied as moot. D.E. 271; D.E. 276; D.E. 277. Nevertheless, the Defendant's attempt to use jury duty as an excuse to not participate in his own trial reflects poorly on him, and marks yet another clear instance of his dilatory, disrespectful, and bad faith tactics.

The Court concludes from the Defendant's behavior in 2024 that the Defendant sought to use any means, no matter how frivolous, no matter how disrespectful to the Court or the Plaintiff to delay or derail this case.

### d.  *2025*

In 2025, the Defendant continued his pattern of flagrantly ignoring the Court's orders. On December 10, 2024, the Court entered an order ("Withdrawal Order") (D.E. 293) granting the motion (D.E. 292) of the Defendant's counsel to withdraw after representing the Defendant for approximately three weeks. D.E. 293. In the Withdrawal

---

[6] The Court has in the past, and would again in the present case, postpone a party's jury duty in another case. As such, even if the Defendant had in fact received a jury summons the day before the start of trial which required his immediate presence, the Court would have affected the Defendant's excusal so that he may attend his own trial.

Order, the Court directed the Defendant to, within twenty days, either secure new counsel and have his counsel file a notice of appearance, or to file a notice of intent to proceed *pro se*. *Id*. After two months without the filing of a notice of appearance of counsel or a notice of intention to proceed *pro se*, the Court entered an Order to Show Cause ("Order to Show Cause") (D.E. 295) why default should not be entered against the Defendant for failure to comply with the Court's orders. D.E. 295. Ten days later, the Defendant responded and informed the Court of his intention to proceed *pro se*. D.E. 297.

Finally, on June 16, 2025, the Court held a long-standing final pretrial conference of which the Defendant had been aware since December 2024. D.E. 301. The Defendant failed to appear in Court. Nevertheless, the Court and the Plaintiff's counsel waited for the Defendant for an additional 30 minutes. When the Defendant failed to appear even then, the Plaintiff moved for default on the Counts against the Defendant.[7] The Court granted the Plaintiff's Motion and dismissed the Defendant's Counterclaim.

Had the Defendant been present, the Court was prepared to discuss the possibility of settlement to avoid trial and identify and try to resolve existing controversies that might delay and impede the trial. The Court additionally planned to review its *voir dire* process. The Court had also prepared to hear argument on and rule on the Defendant's Proposed *Voir Dire* Questions (D.E. 306) and proceed with an initial review of the jury instructions.[8] Instead, the Court recessed until 10 a.m., waiting for the absent Defendant.

---

[7] At the pretrial conference, counsel for the Plaintiff stated that he had been in contact with the Defendant as recently as the previous week in anticipation of the conference.

[8] The Court had a timing conflict on the morning of June 16 that made the timing of the pretrial conference inconvenient. Nevertheless, the Court elected not to change the timing of the pretrial conference in an

At 2:14 in the afternoon of June 16, 2025, the docket reflected the Defendant filed his Apology. (D.E. 309). After conferring with the clerk's office, the Court determined that the Apology was scanned by the clerk's office at 12:49 p.m.[9] In his Apology, the Defendant claims his nonappearance at the pretrial conference was due to unexpected car trouble that morning. D.E. 309. He claims that he "made every effort to attend as quickly as possible" and arrived at the Courthouse at 10:30. *Id.*

The Apology does not state why the Defendant failed to inform either the Plaintiff or the Court of his tardiness or his absence, nor does it explain why the Defendant did not travel to the Courthouse by other means. For instance, the Defendant could have traveled by taxi or rideshare service, by public transportation, or even by walking. The distance between the address the Defendant has listed with the Court and the Courthouse itself is less than one mile. According to Google Maps, traveling by car from the Defendant's address to the Courthouse would take seven minutes, twelve minutes if traveling by public transportation, of which the Defendant could have made use, the Defendant instead remained elsewhere and incommunicado while the Court and Plaintiff's counsel waited for him. As previously stated, the Defendant did not call, email, or appear at the courtroom, or apparently seek assistance from Court personnel.  Other than a garage parking ticket near

---

abundance of caution and out of respect to the parties who may have set their schedules around the expectation of the 9:30 start time.

[9] The Apology was scanned by the clerk's office at 12:49 p.m. However, it was not entered on the docket until 2:14 p.m.

the courthouse, there is nothing that supports his physical presence in the building until he filed his Apology at the Clerk's office no later than 12:49 p.m.[10]

Construed in the light most favorable to the Defendant, the facts in this matter still paint an unfavorable portrait of the Defendant's actions on June 16. Even if the Defendant experienced unexpected car trouble on the morning of the pretrial conference, he did not make any effort to attend the courthouse by taking alternative means of transportation. Nor did he contact the Plaintiff's counsel or the Court to explain his absence, and instead allowed the Court and the opposing party's lawyers to wait for him. The Defendant's Apology does not claim that the Defendant entered the courthouse, attempted to reach the courtroom, or sought assistance from any Court personnel. *See* D.E. 309. The Apology does not account for what the Defendant did in between his supposed arrival at the courthouse at 10:31 and the submission of his Apology no later than 12:49 p.m. *Id*. The Court is unmoved by the Apology and does not excuse the Defendant's absence at the pretrial conference.

For the reasons stated above, the Court finds that the Defendant's failure to appear at the pretrial conference without giving the Court or the Plaintiff notice of his tardiness or unavailability is the latest instance in a clear record and pattern of willful, bad faith, and dilatory behavior by the Defendant. The Court also finds, based on the penalties levied

---

[10] As a pro se litigant, the Defendant does not have electronic filing privileges and must thus file in person. As such, the typewritten Apology must have been prepared outside the courthouse before it was scanned by the clerk's office at 12:49 p.m.

against the Defendant previously in this case, that lesser sanctions would be inadequate to curb this behavior.

The Court has repeatedly admonished and sanctioned Defendant for his clear and willful, dilatory, disrespectful, and bad faith conduct. Despite these deterrents, Defendant has persisted in this behavior, which has prejudiced the Plaintiff and shown the Defendant's flagrant disregard for the Court's orders. For this ongoing behavior by the Defendant throughout the pendency of this litigation, and because lesser sanctions have been ineffective in halting this pattern, the Court finds default judgment on the Counts against the Defendant and dismissal of the Counterclaim appropriate sanctions for the Defendant's willful failure to appear at the pretrial conference.

## IV.    Conclusion

For the preceding reasons, it is **ORDERED AND ADJUDGED** that:

1. The Plaintiff's Motion for Default is **GRANTED** against the Defendant on Counts I, III, and IV.

2. The Plaintiff is **DIRECTED** to file a motion for default judgment within twenty-one (21) days of this Order. Attached to that motion, the Plaintiff shall file an affidavit setting forth the factual, evidentiary, and legal basis of Counts I, III, and IV.

3. The Defendant's Counterclaim (D.E. 34) is **DISMISSED**.

4. The Notice of Apology and Explanation for Missed Pretrial Conference (D.E. 309), inasmuch as it is a Motion to Set Aside Default, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida this 3rd day of September

2025.

*Joan A. Lenard*

**JOAN A. LENARD**

**UNITED STATES DISTRICT JUDGE**